### UNITED STATES of America, Plaintiff,

v.

### Edgar Joe SEARCY, Defendant.

### No. 03–14028–CR.

United States District Court, S.D. Florida.

Dec. 17, 2003.

---

Corey Steinberg, Assistant U.S. Attorney, Fort Pierce, FL, for Plaintiff.

Maurcio L. Aldazabal, Coral Gables, FL, for Defendant.

## ORDER GRANTING MOTION FOR UPWARD DEPARTURE

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon the Government's Motion for Upward Departure (DE # 48).

## I. BACKGROUND

On April 14, 2003, Defendant Edgar Joe Searcy, via instant text messaging on America Online, communicated with Neil Spector, a detective with the St. Lucie County, Florida Sheriff's Office who was working undercover and posing on the internet as a father of a 13 year-old daughter. The communications concerned "swapping" young daughters to engage in

sexual activity with the children. Searcy and Detective Spector met the next day to discuss the proposition in person. At the meeting, which was recorded by Detective Spector, Searcy stated that he intended to digitally penetrate and perform oral sex on Detective Spector's minor daughter. Authorities then arrested Searcy. On September 25, 2003, Searcy pleaded guilty to one count of using interstate commerce to engage in a sexual activity with a minor, in violation of 18 U.S.C. § 2422(b).[1]

A presentence investigation report (the "PSI") prepared by the United States Probation Office recommended that Searcy be sentenced pursuant to the 2002 United States Sentencing Commission, *Guidelines Manual* ("USSG") § 4B1.1 (Nov.2002) as a career offender. The PSI provided a three level decrease in Searcy's offense level for acceptance of responsibility, USSG § 3E1.1(a), (b)(2),[2] resulting in a total offense level of 26. Finally, as a career offender under USSG § 4B1.1(b), the PSI placed Searcy in criminal history category VI. Accordingly, the Guidelines call for a sentence of 120–150 months. The statutory maximum sentence of imprisonment for Searcy's offense is 15 years, or 180 months. 18 U.S.C. § 2422(b) (2000).

## II. CAREER OFFENDER

To be considered a career offender under the Guidelines: (1) the defendant

---

1. The statute provides:

   Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

   18   U.S.C. § 2422(b) (2000).

2. Speaking under oath at his December 4, 2003 sentencing hearing (the ."sentencing hearing"), Searcy's allocution was entirely inconsistent with accepting responsibility for his crime. However, because, as discussed below, upward departure to the statutory maximum sentence is appropriate, nullifying the three point decrease for acceptance of responsibility or assessing additional points for obstruction of justice, *see* USSG § 3C1.1, would have no practical effect and, consequently, neither has been considered.

must have been at least 18 years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is a crime of violence; and (3) the defendant must have at least two prior felony convictions of a crime of violence. USSG § 4B1.1(a).[3] Because (1) Searcy was 47 years old at the time he committed the instant offense, and (2) one of his 1988 Florida convictions for (a) sexual activity with a child and (b) lewd, lascivious or indecent act upon a child under the age of sixteen (the "Florida convictions") has been established by Eleventh Circuit precedent as a crime of violence, *see infra* note 6, the issue is whether Searcy's instant conviction for use of interstate commerce to engage in a sexual activity with a minor (the "instant offense") and his 1996 conviction in Kansas for sexual exploitation of a child (the "Kansas conviction") constitute crimes of violence.

■ A crime of violence is defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that ... has as an element the use, attempted use, or threatened use of physical force against the person of another, or ... otherwise involves conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a). In deciding whether a convic-

tion should be classified as a crime of violence, "a court should look only to the elements of the convicted offense, and not to the conduct underlying the conviction." *United States v. Rutherford,* 175 F.3d 899, 905 (11th Cir.1999). Commentary to the USSG § 4B1.2 provides that a court may also consider "conduct set forth (*i.e.,* expressly charged) in the count of which the defendant was convicted ... [where the conduct,] by its nature, presented a serious potential risk of physical injury to another." USSG § 4B1.2, comment (n.1). However, the elements of the offenses of Searcy's convictions categorically pose serious risks of physical injury to others, thus obviating the need for the Court to analyze charged conduct.

## A. The Instant Offense

Through its own research, the Court has not discovered a case addressing whether 18 U.S.C. § 2422(b) is a crime of violence under USSG § 4B1.1. However, the Tenth Circuit found that § 2422(b) is a crime of violence under 18 U.S.C. § 16 for purposes of victim restitution. *United States v. Johnson,* 183 F.3d 1175, 1179 (10th Cir. 1999). This classification under 18 U.S.C. § 16 directs a similar finding under USSG

**3.** The Government asserts that application of USSG § 4B1.5, which enhances the offense level and criminal history category of a "Repeat and Dangerous Sex Offender Against Minors," is more appropriate here than USSG § 4B1.1. A glance at USSG § 4B1.5's descriptive title could lead one to believe that it is tailor-made for this case. However, one of the prerequisites for use of USSG § 4B1.5 is the inapplicability of USSG § 4B1.1. USSG § 4B1.5 ("[This section applies] [i]n any case in which [1] the defendant's instant offense is a covered sex crime, [2] § 4B1.1 (Career Offender) does not apply, and [3] the defendant has committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction.").

Thus, while USSG § 4B1.5 appears to target sex offenders fitting Searcy's criminal profile, it is inapplicable where a defendant has committed two prior crimes of violence, regardless of whether those crimes can also be classified as "covered sex crimes." *See* USSG 4B1.1(a). That USSG § 4B1.5 assesses a lower criminal history category than USSG § 4B1.1 also leads to the conclusion that USSG § 4B1.1 targets twice-convicted felons like Searcy, and that USSG § 4B1.5 serves as a safety valve to punish repeat sex offenders against minors who do not qualify for sentencing under USSG § 4B1.1. The Court therefore adopts the Probation Office's recommendation to apply USSG § 4B1.1.

§ 4B1.1 in light of the Eleventh Circuit's holding in *Rutherford:*

> [Nothing] requires a different decision between the definition of a crime of violence under 18 U.S.C. § 16 ("crime of violence" is a felony that, by its nature, involves a "substantial risk of physical force against" the victim) and the definition of a crime of violence for career offender purposes under the sentencing guidelines: an offense punishable by a year or more in prison that "involves conduct that presents a serious potential risk of physical injury to another."

175 F.3d at 905 (quoting USSG § 4B1.2).

Additionally, the Sixth Circuit, in an unpublished opinion, found that 18 U.S.C. § 2422(a) [4] qualifies as a crime of violence for USSG § 4B1.1 purposes. *United States v. Smith,* 20 Fed. Appx. 412, 418, No. 00–5704, 2001 WL 1176422, at *5 (6th Cir. Sept.25, 2001), *cert. denied,* 535 U.S. 1070, 122 S.Ct. 1944, 152 L.Ed.2d 848 (2002).[5] In deciding that § 2422(a) constitutes a crime of violence, the *Smith* court relied on its own precedent of classifying offenses under 18 U.S.C. § 2251(a) (sexual exploitation of a minor) and a state statute prohibiting "sexual contact" with a minor as crimes of violence. *Id.* (citing *United States v. Campbell,* 256 F.3d 381, 395–97 (6th Cir.2001) and *United States v. Champion,* 248 F.3d 502, 505–06 (6th Cir.2001)). "The Sixth Circuit has instructed that any felony involving the sexual exploitation of a juvenile inherently poses a serious potential risk of physical injury to the victim and hence constitutes a categorical 'crime of violence.'" *Id.* This Court agrees with the Sixth Circuit's reasoning in *Smith* and finds that § 2422(b) is a crime of violence under USSG § 4B1.1. Moreover, the Eleventh Circuit's analysis in *Rutherford* of a Florida statute proscribing sexual conduct with minors supports recognizing § 2422(b) as a crime of violence, as well as the general notion that sexual offenses against minors inherently pose the risk of physical injury to victims, as explained by the Sixth Circuit. 175 F.3d at 905 (holding that conviction under Fla. Stat. § 800.04 [6]

---

**4.** The statute provided:

> Whoever knowingly persuades, induces, entices, or coerces any individual to travel in interstate or foreign commerce, or in any Territory or Possession of the United States, to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.
>
> 18 U.S.C. § 2422(a) (2000).

**5.** Of relevance to this analysis, the victim of the offense in *Smith* was a minor.

**6.** The Florida statute stated:

> A person who:
>
> (1) Handles, fondles, or assaults any child under the age of 16 years in a lewd, lascivious, or indecent manner;
>
> (2) Commits actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, actual lewd exhibition of the geni-

tals, or any act or conduct which simulated that sexual battery is being or will be committed upon any child under the age of 16 years or forces or entices the child to commit any such act;

(3) Commits an act defines as sexual battery under s. 794.011(1)(b) upon any child under the age of 16 years; or

(4) Knowingly commits any lewd or lascivious act in the presence of any child under the age of 16 years, without committing the crime of sexual battery, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section. A mother's breast feeding of her baby does not under any circumstance violate this section.

Fla. Stat. § 800.04 (1993).

Since one of Searcy's Florida convictions resulted from a violation of Fla. Stat. § 800.04(1), the same statute at issue in *Rutherford* and deemed a crime of violence by that

qualified as a crime of violence under USSG § 4B1.1).

Beyond just the general categorization of this genre of offenses as crimes of violence, the overlap of elements in § 2422(a), presumably at issue in *Smith*, and § 2422(b), the instant statute, further supports classifying subsection (b) as a crime of violence. *Compare supra* note 4, with *supra* note 1. Notably, while both subsections (a) and (b) require the "persua[sion], induce[ment], entice[ment], or coerc[ion]" of an individual for purposes of traveling to engage in illicit sexual conduct (§ 2422(a)) or to simply engage in such conduct (§ 2422(b)), subsection (b) specifically targets victims who are minors and carries a significantly stiffer penalty than subsection (a). 18 U.S.C. § 2422 (2000). Surely the risk of physical injury is even greater where the perpetrator preys upon a vulnerable class of victims such as children. USSG § 4B1.1's definition of crimes of violence therefore includes offenses under 18 U.S.C. § 2422(b).

## B. The Kansas Conviction

The sole remaining issue is whether Searcy's Kansas conviction qualifies as a crime of violence. Although the statute at issue in the Kansas conviction differs in its elements of offense from those in the Florida statute at issue in *Rutherford*, Searcy's Kansas offense is also a crime of violence. The principle espoused in the Sixth Circuit regarding the inherent risk of potential physical harm stemming from acts of sexually exploiting minors, discussed above, and the Eleventh Circuit's holding in *Rutherford* favor this classification.

On September 30, 1996, Searcy was convicted of violating Kan. Stat. § 21–3516(a)(1), sexual exploitation of a child. That statute states: "Sexual Exploitation

of a Child is: (1) Employing, using, persuading, inducing, enticing or coercing a child under 18 years of age to engage in sexually explicit conduct for the purpose of promoting any performance." Kan. Stat. § 21–3516(a)(1) (West 2003). The statute defines "sexually explicit conduct" as "actual or simulated [sexual conduct]: Exhibition in the nude; sexual intercourse or sodomy, including genital-genital, oral-genital, anal-genital or oral-anal contact, whether between persons of the same or opposite sex; masturbation; sado-masochistic abuse for the purpose of sexual stimulation; or lewd exhibition of the genitals, female breasts or pubic area of any person." *Id.*(b)(1). Such conduct presents "a serious potential risk of physical injury" to its young victims. *Smith*, 20 Fed. Appx. at 418 ("[A]ny felony involving sexual exploitation of a juvenile inherently poses a serious potential risk of physical injury to the victim . . . ."). Consequently, the Kansas conviction also qualifies as a crime of violence. With each of the prerequisites for classification of Searcy as a career offender under USSG § 4B1.1 being satisfied, Searcy is accordingly assessed a total offense level of 26 and a criminal history designation of category VI.

## III. UPWARD DEPARTURE

The Government moves the Court to depart from the Guidelines, pursuant to USSG §§ 4A1.3 (horizontal departure) and 5K2.0 (vertical departure), up to the statutory maximum of 15 years imprisonment. The similarity of Searcy's prior convictions with the present crime establishes a likelihood of recidivism and, the Government contends, warrants a horizontal upward departure. Additionally, the Government argues that Searcy's recidivism and repeated offenses against children in a rela-

court, the Florida conviction constitutes a crime of violence.

tively short period of time presents circumstances outside of the "heartland" of Guidelines cases, thus supporting a vertical upward departure. Based on a review of the record, which details Searcy's prior sexual misconduct with minors, along with Eleventh Circuit precedent, the Court agrees with the Government that upward departure under USSG § 4A1.3 is warranted, but finds that USSG § 5K2.0 is inapplicable to the instant offense.

## A. USSG § 4A1.3

■ The Guideline policy statement regarding criminal history categorization states:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range....
>
> .     .     .     .     .
>
> A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.

USSG § 4A1.3, p.s. The section also states that, even where a defendant has been assigned to criminal history category VI, upward departure may be warranted if the number and nature of a defendant's prior offenses comprise "an egregious, serious criminal record." *Id.* In such an instance, a court is instructed to move "incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a range appropriate to the case." *Id.*

■ A defendant's likelihood of recidivism supports upward departure where "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or *the likelihood that defendant will commit other crimes.*" *United States v. Riggs,* 967 F.2d 561, 563 (11th Cir.1992). Similarity of offenses is a reliable indicator of recidivism. "The recidivist's relapse into the same criminal behavior demonstrates his lack of recognition of the gravity of his original wrong, entails greater culpability for the offense with which he is currently charged, and suggests an increased likelihood that the offense will be repeated again." *Id.* at 564.

Although Searcy's prior convictions were factored into his Guidelines computation,

> [i]nclusion of a factor in the Guidelines calculation does not proscribe departure based on consideration of the factor. A sentencing court may depart based on a considered factor if the factor is "present to an exceptional degree or in some other way makes the case distinguishable from an ordinary case where the factor is present."

*United States v. Melvin,* 187 F.3d 1316, 1322 (11th Cir.1999) (quoting *Koon v. United States,* 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). Here, Searcy's inability to refrain from engaging in sex offenses involving minors during his limited time outside of incarceration over the past 15 years foretells of the high probability that Searcy will once again revert to the type of repugnant conduct for which he currently is, and previously has been, convicted. The exceptional degree of his recidivist characteristics merits consideration outside that provided by the Guidelines used to calculate his criminal history category.

Revisiting the relevant parts of Searcy's criminal history portrays a career sexual predator of children who is undeterred by incarceration. His two prior convictions involving sex offenses stemmed from sexual contact with minor females of approximately ten and six years of age, respectively, both of whom were his stepdaughters at the times of the offenses. In the second of those offenses, the Kansas conviction, Searcy initiated a relationship with his soon to be wife, Diana Searcy, while incarcerated in Florida for his 1988 convictions for sexual activity involving his previous stepdaughter. Searcy's contact with Diana Searcy began when she responded to a personal advertisement he placed that, according to her, read: "MomDo your kids need a daddy?" (Gov't's Mot. for Upward Departure, Attach. B.) After maintaining contact with Diana Searcy during his imprisonment, Searcy moved in with her and her stepdaughter in Kansas upon his release from Florida custody. Searcy began molesting Diana Searcy's stepdaughter almost immediately thereafter. After being returned to Florida and serving additional time for probation violations, Searcy was taken into custody by Kansas authorities in July 1995 and later pled guilty to offenses stemming from his unlawful sexual conduct with Diana Searcy's daughter.

Although Searcy was no longer provided with familial prey, he hardly moved in the right direction. Less than nine months after his July 2002 release from Kansas custody, he prowled for young victims once again, leading to the instant offense. Based on audio-taped conversations, Searcy clearly intended to digitally penetrate and perform oral sex on Detective Spector's fictitious 13 year-old daughter. According to Searcy's post-arrest interview, it took him within a matter of days of opening an online account to successfully hunt for minor sex victims and schedule the meeting with Detective Spector to effectuate his "swapper's club." (Gov't's Response to Def.'s Objections to Mot. for Upward Departure, Attach. A at 4.) As the Government posited at the sentencing hearing, Searcy has "progressed" to utilizing the internet to reach a near infinite pool of potential minor victims; he has moved beyond targeting the daughters of his wives and now presents a serious threat to a significantly larger audience than when first convicted for sexual crimes against minors in 1988. Indeed, in the short time he had a computer and internet access, Searcy not only committed the instant offense, but also downloaded several images of child pornography.[7]

Searcy's conduct represents an extreme pattern of sexual predation upon young girls that is not abated by periods of incarceration of shorter lengths than available here. Despite being out of custody for a cumulative period of approximately 12

---

7. Due to the descriptive and graphic nature of the images, the Court considered testimony from Sergeant John D'Andrea of the Palm Beach County Sheriff's Office in admitting the images into the record. The Court relied on Sergeant D'Andrea's training and experience in the field of technology crimes to find that the images (1) belonged to Searcy, and (2) were in fact pornographic and of very young minors. After Searcy's counsel was given the opportunity to review the images, the Court admitted them and ordered Sergeant D'Andrea to retain custody of the evidence should they be needed for appellate review.

Further evidencing his inability to harness his urge of sexual gratification at the expense of children, Searcy requested to view the images. The Court, taking into considering Searcy's assertion that the images did not belong to him, denied the request and found that his counsel's opportunity to review the images sufficed for sentencing purposes. Searcy presented no evidence concerning the images.

months since 1994, Searcy has committed two sexual offenses against minors in that time, in addition to the 1988 Florida convictions for like acts. Searcy's execution of similar illegal acts relative to his time outside of confinement creates a dangerous disproportion. *United States v. Adams,* 316 F.3d 1196, 1199 (11th Cir.) ("U.S.S.G. § 4A1.3 is concerned with the pattern or timing of prior convictions."), *cert. denied,* —— U.S. ——, 123 S.Ct. 1920, 155 L.Ed.2d 840 (2003). The Court doubts that the criminal history categorizations of either USSG §§ 4B1.1 or 4B1.5 [8] contemplated a three-time offender of sexual crimes against minors who cannot remain out of custody for more than a matter of months before engaging in consistently abhorrent conduct. Searcy has thoroughly exhibited recidivist tendencies and the record gives the Court no reason to believe he will not re-offend once released from custody. Therefore, the assigned criminal history category VI is inadequate and upward departure pursuant to USSG § 4A1.3 is appropriate.

### B.   USSG § 5K2.0

█ The policy statement regarding departures in offense levels also grants a court authority to depart from the applicable Guideline range "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" USSG § 5K2.0, p.s. (quoting 18 U.S.C. § 3553(b)). A court may depart when the circumstances presented take a case outside the " 'heartland,' a set of typical cases embody-

ing the conduct each guideline describes." USSG Ch. 1, Pt. A, intro. comment; *Koon,* 518 U.S. at 93–96, 116 S.Ct. 2035.   In considering departure, a court should determine:

> 1) What features of this case, potentially, take it outside the Guidelines' "heartland" and make of it a special, or unusual, case?
>
> 2) Has the Commission forbidden departures based on those features?
>
> 3) If not, has the Commission encouraged departures based on those features?
>
> 4) If not, has the Commission discouraged departures based on those features?

*United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993); *Koon,* 518 U.S. at 95, 116 S.Ct. 2035.

█ The Government urges the Court to vertically depart under USSG § 5K2.0 because the "defendant's behavior presents an exceptional and extreme instance of recidivism fully warranting the maximum statutory sentence that can be imposed." (Gov't's Mot. for Upward Departure at 13.)   The Addendum to the PSI also recommended upward departure pursuant to USSG § 5K2.0 based on Searcy's recidivism and predilection towards child victims. The Court agrees with the substantive positions of both the Government and the Probation Office, and accounted for Searcy's recidivism in departing from his criminal history categorization under USSG § 4A1.3. However, Searcy's pattern of similar criminal activity is evidence of his recidivism, and not a separate factor upon which the Court should depart pursuant to USSG § 5K2.0.[9] *Riggs,* 967 F.2d at

---

8. The criminal history enhancement section proposed by the Government. *See also infra* note 11.

9. At the sentencing hearing, the Court indicated that it intended to depart upward based on both USSG §§ 4A1.3 and 5K2.0, but that a written opinion detailing the departure and

563 ("Even more persuasive evidence of [defendant's] recidivist tendencies is the similarity of the crimes for which he has been convicted.").

The Eleventh Circuit has warned against merging the two vehicles of departure. *E.g., Adams,* 316 F.3d at 1198 ("This Court has always recognized the distinction between guided [USSG § 4A1.3] and unguided [USSG § 5K2.0] departures."). The fact that prior punishment has not deterred Searcy from re-offending in a similarly detestable manner goes to the issue of recidivism, of which the Eleventh Circuit has limited consideration for departure purposes to USSG § 4A1.3. *United States v. Smith,* 289 F.3d 696, 710 (11th Cir.2002) ("Because U.S.S.G. § 4A1.3 explicitly contemplates departures from criminal history category based on likelihood of recidivism, we have previously held that any departure made on the ground that defendant is unlikely to commit crimes in the future must be made under … § 4A1.3, rather than under U.S.S.G. § 5K2.0 …." (quotations omitted)); *see also Adams,* 316 F.3d at 1199 ("Analysis under U.S.S.G. § 5K2.0 is unnecessary where the Guidelines provide a specific basis for the relevant departure.").

Aside from Searcy's severe recidivist tendencies, his instant offense's components of exploitation of young children and otherwise morally repugnant behavior do not demonstrate, for purposes of USSG § 5K2.0, aggravating circumstances that

are absent in a set of typical cases involving the same detestable offense against minors.[10] Consequently, the instant offense does not fall outside the Guidelines' "heartland." *Cf. United States v. Hersh,* 297 F.3d 1233 (11th Cir.2002) (holding USSG § 5K2.0 departure proper where, over 20 year period, defendant sexually preyed on young minor males in third world countries who were especially vulnerable due to their poverty and lack of sophistication), *cert. denied,* 537 U.S. 1217, 123 S.Ct. 1319, 154 L.Ed.2d 1071 (2003). While the Court agrees with the Government that Searcy's repeated offenses within a short period of time represent amplified circumstances of recidivism and "fully warrant[ ] the maximum statutory sentence," consideration of those circumstances and imposition of the maximum statutory sentence must be effectuated through USSG § 4A1.3, and not USSG § 5K2.0. *Smith,* 289 F.3d at 710.

## IV. CONCLUSION

The Court finds that, for the aforementioned reasons and pursuant to USSG § 4A1.3, an upward departure of four levels to offense level 30 is warranted. USSG § 4A1.3 ("Where the court determines that the extent and nature of the defendant's criminal history, taken together, are sufficient to warrant an upward departure from Criminal History Category VI, the court should structure the departure by

---

reasoning thereof would follow. Upon further reflection, the Court finds that departure is proper only pursuant to USSG § 4A1.3. This finding in no way affects the terms of Searcy's sentence since the same Guideline range is reached via departure pursuant to USSG § 4A1.3 as through the four level departure under USSG § 5K2.0 contemplated by the Court at the sentencing hearing.

**10.** Searcy's target of a 13–year old female in this instance does not, in the context of USSG

§ 5K2.0, present an aggravating or mitigating circumstance which takes this case outside the "heartland." For example, 18 U.S.C. § 2422(b), the offense of Searcy's conviction, imposes a greater maximum period of incarceration than for similar conduct involving non-age specific victims under 18 U.S.C. § 2422(a). Accordingly, a greater base offense level under USSG § 4B1.1.(b) is assessed than had the offense not involved a child victim.

moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case."); *United States v. Dixon,* 71 F.3d 380 (11th Cir.1995) ("[D]istrict courts, in following the methodology described in amended § 4A1.3 for imposing criminal history departures above category VI, need not explicitly discuss their reasons for bypassing incremental offense level sentencing ranges."). The Guideline range for a 30 offense level and classification in criminal history category VI is 168–210 months, with 18 U.S.C. § 2422(b) setting the maximum incarceration period at 180 months. 18 U.S.C. § 2422(b) (2000).[11] Accordingly,

UPON CONSIDERATION of the motion, the response and reply thereto, objections, testimony and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the Government's Motion for Upward Departure (DE # 48) is GRANTED.

---

11. Even if the Court agreed with the Government's assessment that USSG § 4B1.5, and not USSG § 4B1.1, is the more appropriate Guideline to address Searcy's criminal history before upward departure, the Court's sentence of 180 months would still be valid. Had the Court applied USSG § 4B1.5, the direction of its USSG § 4A1.3 departure would have been one level horizontally, and three levels down the sentencing table, placing Searcy in criminal history category VI and his offense level at 29. The 180 month sentence falls within this post-departure Guidelines range.